UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS MORRIS,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>RUSSELL YOUNG, et al.,<br><br>　　　　　　Defendants. | Case No. CV 12-00687 DMG (FMOx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO COPYRIGHT INFRINGEMENT [DOC. # 21]** |

　　　This matter is before the Court on Plaintiff Dennis Morris' Motion for Summary Judgment as to Copyright Infringement, filed October 19, 2012 [Doc. # 21]. The Court conducted a hearing on the Motion on January 11, 2013. Following argument, Defendant Russell Young filed supplemental briefing on January 16, 2013, addressing *Cariou v. Prince*, 784 F. Supp. 2d 337 (S.D.N.Y. 2011) [Doc. # 28]. Having duly considered the arguments of counsel as presented in their papers and at the hearing, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Morris' Motion for Summary Judgment.

//
//
*//*

# I.

## **PROCEDURAL HISTORY**

On January 1, 2012, Plaintiff Dennis Morris filed a Complaint against Defendant Russell Young seeking damages for copyright infringement and an injunction enjoining Young from further infringement of Morris' photograph ("the Subject Photograph") of the musicians Sid Vicious and Johnny Rotten of the punk rock band, the Sex Pistols [Doc. # 1]. On April 16, 2012, Young filed an Answer to the Complaint, raising various defenses [Doc. # 8]. Morris filed the instant Motion for Summary Judgment on November 26, 2012.

# II.

## **FACTUAL BACKGROUND**

The following facts, viewed in the light most favorable to Young solely for purposes of this Motion, are taken from the evidence presented in support of and in opposition to the Motion. The facts set forth below are undisputed unless otherwise noted.

Morris is a photographer and artist. (Compl. ¶ 6; Declaration of Dennis Morris ¶ 1 [Doc. # 22].) Morris has published two books: *Never Mind the B\*ll\*cks: A Photographic Record of the Sex Pistols Tour* (United Kingdom, 1991), published with copyright notice; and *Destroy: Sex Pistols 1977* (United Kingdom, 1998). (Declaration of Douglas A. Linde, ¶¶ 3-4, Exhs. 2-3 [Doc. # 23]; Declaration of Richard H. Zaitlen, ¶ 5, Exh. D at 23 [Doc. # 25-6].) Both books were originally published in the United Kingdom. (*See* Linde Decl. ¶¶ 3-4, Exhs. 2-3.) The books contain original photographs of the Sex Pistols on tour, taken by Morris, including the Subject Photograph, which depicts Sid Vicious and Johnny Rotten performing on stage. (Linde Decl. ¶¶ 3-4, Exhs. 2-3; Morris Decl. ¶ 1.) Morris asserts that he is the sole author and owner of the Subject Photograph. (*Id.* at ¶¶ 1-3.) In addition to the two books, Morris has distributed the Subject Photograph through a website called "camerapress.com." (Zaitlen Decl. ¶ 5,

Exh. D at 25.)  Morris obtained United States copyright registration certificates for the two books in 2011.  (Linde Decl. ¶¶ 3-4, Exhs. 2-3.)

Young is an artist and former photographer.  (Declaration of Russell Young, ¶ 3 [Doc. # 25-8].)  Sometime in the mid-2000s, Young created a series of works based on images of the Sex Pistols that he found on the Internet.  (*Id.* at ¶ 4.)  None of the images Young used in this series contained copyright notices, and Young therefore believed they were in the public domain.  (*Id.* at ¶ 5-6, Exh. 2.)  Among the unmarked images Young found on the Internet was the Subject Photograph.[1]  (*Id.* at ¶¶ 5, 12, Exh. 1.)  In a deposition on November 20, 2012, Young stated that he does not recall exactly how he came upon the image of the Subject Photograph on the Internet, but he believes that he found it "multiple times."  (Linde Decl. ¶ 2, Exh. 1 ("Young Depo.") at 41:10-18.)

Young used the image of the Subject Photograph he found on the Internet to create several works that are the subject of this case (together, "the Accused Works").  First, a piece called "Sex Pistols in Red" depicts the Subject Photograph, cropped slightly to more closely frame the subjects and tinted in a deep red color.  (Young Decl. ¶ 14; SGD at ¶ 4.)  Second, a piece called "Sex Pistols" depicts the Subject Photograph, printed using black enamel on an acrylic background.  (Young Decl. ¶ 14.)  According to Young, he altered the colors and shades, deepened the contrast between the black and white portions of the image, and added "grittiness" to the image by printing it in black enamel on an acrylic background.  (*Id.*)  Young created several prints of this work, each of which was "hand-pulled, so no two works are exactly alike."  (*Id.*)  Third, a piece called "White Riot + Sex Pistols" depicts two images of the Subject Photograph side-by-side, with a

---

[1] Young purports to dispute that he had access to the Subject Photograph, asserting instead that he had access to "an image on the internet resembling the image portrayed in the Subject Photograph." (Def.'s Statement of Genuine Disputes of Material Fact ("SGD") ¶ 3 [Doc. # 25-1].)  Young admits in his declaration, however, that he used "images of the Subject Photograph" that he found on the Internet to create several works of art.  (Young Decl. ¶¶ 12-14.)  Accordingly, the Court finds that it is undisputed that Young found an image of the Subject Photograph on the Internet.

Union Pacific logo and the words "White Riot" and red stars graffitied atop the images. (*Id.* at ¶ 12.)

In his deposition, Young stated that he does not recall why he decided to use the Subject Photograph when creating the Accused Works or what his inspiration was to create the Works. (Young Decl. at 42:12-16.) He stated that he does not recall if he was "trying to make a . . . particular statement" or offer an opinion when making the Accused Works, and he does not recall if he was trying to criticize anything through his use of the image. (*Id.* at 42:20-43:15.) In contrast, in his declaration in opposition to the Motion for Summary Judgment, Young states that he creates art for "social commentary" on "social norms, values, and the like." (Young Decl. ¶ 11.) He states that the red tint he applied to "Sex Pistols in Red" was intended to "amplif[y] the Sex Pistols punk-rock counter-culture image," and the "grittiness" he applied to "Sex Pistols" was intended to mirror the grittiness of the band members themselves. (*Id.* at ¶¶ 13-14.)

Prior to the initiation of this lawsuit, Young earned a total of $8,940 from sales of the Accused Works. (Young Decl. ¶ 10.)

## III.
## **LEGAL STANDARDS**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires

the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(c), (e) (1986)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

## IV.
## DISCUSSION

The Copyright Act bestows on the owner of a copyright certain exclusive rights, including the rights to reproduction, creation of derivative works, and distribution. 17 U.S.C. § 106(1)-(3). Morris alleges that Young engaged in copyright infringement by making, distributing, and selling derivative works from the Subject Photograph. (Compl. ¶¶ 16-22.) To establish copyright infringement, Morris must show (1) ownership of a valid copyright, and (2) the unauthorized copying of constituent elements of the copyrighted work that are original. *See Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991). It is undisputed that Morris did not authorize Young to use the Subject Photograph in the Accused Works. (SGD ¶ 2.)

**A.     Ownership of a Valid Copyright**

To address Morris' claim, the Court must first determine whether the Subject Photograph is entitled to copyright protection. To qualify for copyright protection, a work must be "original"; in other words, it must have been "independently created by the author" and possess "at least some degree of creativity." *Feist*, 499 U.S. at 345. Copyright in a work "vests initially in the author or authors of the work." 17 U.S.C. § 201(a). Under 17 U.S.C. § 410(c), a certificate of registration made before or within five years after first publication of the work constitutes prima facie evidence of the

validity of the copyright and entitles the holder to a "rebuttable presumption of originality." Works registered more than five years after first publication are not entitled to this presumption, but the Court may still consider the effect of a registration certificate issued thereafter when determining validity of the copyright. 17 U.S.C. § 410(c).

As a threshold matter, the Ninth Circuit has held that photographs are entitled to copyright protection. *Monge v. Maya Magazines, Inc.*, 688 F.3d 1164, 1177 (9th Cir. 2012) (photographs of a secret celebrity wedding considered creative and entitled to copyright protection); *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1077 (9th Cir. 2000) (photographs of a vodka bottle to be featured in advertisements were entitled to copyright protection under "the longstanding and consistent body of case law holding that photographs generally satisfy this minimal standard" of creativity). Morris authored and published the Subject Photograph. (Morris Decl. ¶¶ 1-2.) Additionally, Morris obtained copyright registration certificates for the two books in which the Subject Photograph was published on July 13, 2011. (Linde Decl. ¶¶ 3-4, Exhs. 2-3.) Because Morris did not obtain certificates in the United States within five years of the books' first publication, in 1991 and 1998, the certificates do not raise a presumption of validity. *See Ets-Hokin*, 225 F.3d at 1075. Nevertheless, the certificates are entitled to some weight in favor of finding ownership of a valid copyright. *See* 17 U.S.C. § 410(c).

Young argues that Morris has not established ownership of the Subject Photograph because it and other images that appear to have been created from the same photoshoot appear on various Internet websites either unlabeled or labeled as being in the public domain. (*See* Young Decl. ¶¶ 5, 7, Exh. 1.) Young provides several website print-outs showing the Subject Photograph without reference to any copyright. (*Id.* at Exh. 1.) Without more, the mere fact that images of the Subject Photograph appear on the Internet without attribution does not undermine Morris' authorship and ownership of the copyrights. Accordingly, the Court finds that no material dispute of fact exists as to Morris' ownership of a valid copyright in the Subject Photograph. *See Feist*, 499 U.S. at 345.

B.     **Copying of Original Elements of the Work**

Morris may establish copying either by direct evidence of copying or by showing that Young (1) had access to the work and (2) that "the two works are substantially similar" in idea and expression. *See Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 481 (9th Cir. 2000). Here, it is undisputed that Young found an image of the Subject Photograph on the Internet and copied it to make the Accused Works. (*See* Young Decl. ¶ 12 ("I made numerous changes to the images of the Subject Photograph I found on the internet."), ¶ 13 ("I changed the image of the Subject Photograph I found on the internet by cropping it to draw focus on the members of the band . . . ."), ¶ ("I changed the image of the Subject Photograph found on the internet by adding grittiness to it, and altering the colors and shades . . . .").) Accordingly, the Court need not rely on evidence of access and substantial similarity to determine whether a copying took place because the undisputed evidence shows that Young copied the Subject Photograph. *See Funky Films, Inc. v. Time Warner Ent'mt Co., L.P.*, 462 F.3d 1072, 1076 (9th Cir. 2006) (requiring proof of access and substantial similarity only "[a]bsent evidence of direct copying").

C.     **Fair Use**

Under 17 U.S.C. § 107, the "fair use" of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research, is not an infringement of copyright." The "fair use" exception "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 817 (9th Cir. 2002) (quoting *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1399 (9th Cir. 1997)). Courts consider four factors in the "fair use" analysis: (1) the purpose and character of the use; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. When material facts are not in dispute, courts may appropriately decide the fair use inquiry on summary judgment. *Mattel, Inc. v. Walking Mountain*

*Productions*, 353 F.3d 792, 800 (9th Cir. 2003).  Because fair use is an affirmative defense to infringement, the defendant bears the burden of proving fair use.  *Henley v. DeVore*, 733 F. Supp. 2d 1144, 1151 (C.D. Cal. 2010).

### 1. "Sex Pistols" and "Sex Pistols in Red"

#### a. The Purpose and Character of the Use

The first factor in the fair use inquiry is "the purpose and character of the use," including whether it is of a commercial or non-commercial nature. *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569, 579, 114 S. Ct. 1164, 127 L. Ed. 2d 500 (1994). At the outset, it is undisputed that Young created the Accused Works, at least in part, for a commercial purpose, and that he received approximately $8,940 from the sale of all of the Accused Works. (Young Decl. ¶ 10.) The commercial nature of the use therefore weighs against a finding of fair use. *See Monge*, 688 F.3d at 1177.

The central purpose of the first factor, however, is whether the new work merely "supersedes" the objects of the original creation or instead "is "transformative" in that it "adds something new, with a further purpose or different character, altering the first [work] with new expression, meaning, or message." *Monge*, 688 F.3d at 1177. A mere difference in purpose, however, "does not necessarily create new aesthetics or a new work that 'alters the first work'" such that it is transformative. *Monge*, 688 F.3d at 1176. "A use is considered transformative only where a defendant changes . . . or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Wall Data Inc. v. Los Angeles Cty. Sheriff's Dep't*, 447 F.3d 769, 778 (9th Cir. 2006). Although a transformative use is not necessary for a finding of fair use, "the more transformative the new work, the less will be the significance of the other factors . . . that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579.

In *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006), the defendant Jeff Koons, an artist renowned in the genre of "appropriation art," was sued by a photographer whose original work, a photograph entitled "Silk Sandals," he had incorporated into his own

works. "Silk Sandals" depicted a woman's feet and lower legs draped across a man's lap and had originally been sold to a fashion magazine. Koons incorporated the feet and lower legs into his piece, "Niagara," alongside several other sets of women's legs against a backdrop of sweet foods and landscape. *Id.* at 247-48. According to Koons, "Niagara" commented on the relationship between media culture and human appetites for food, sex, and recreation. *Id.* at 247. In conducting its fair use analysis, the Second Circuit focused on the unique purpose of "Niagara" as compared to the original purpose of the plaintiff's work. *Id.* at 252-53. The court noted that Koons changed the colors, context, medium, size, and details of the photograph and gave it an "entirely different purpose and meaning" in his final work, and it therefore concluded that the use was transformative. *Id.* at 253.

In contrast, in *Gaylord v. U.S.*, 595 F.3d 1364 (Fed. Cir. 2010), the plaintiff sculptor designed, built, and owned the copyrights to "The Column," the Korean War Veterans memorial in Washington, D.C. which depicts a life-size platoon of 19 soldiers walking in formation. A photographer took a photograph of the memorial depicting 14 of the soldiers dusted with snow that eventually came into the hands of the United States Postal Service. *Id.* at 1371. The Postal Service widely distributed stamps portraying a black-and-white image of the photograph. *Id.* The Federal Circuit concluded that the stamp reflected no purpose or commentary beyond the purpose of the original work: commemorating the Korean War. *Id.* at 1373. Notwithstanding that the stamp altered the appearance and feel of the original memorial, it did not "transform its character, meaning, or message" and therefore was not transformative under *Campbell*. *Id.* at 1374.

Here, "Sex Pistols" and "Sex Pistols in Red" appear to be little more than reproductions of the Subject Photograph with minor alterations. By his own admission, Young only modified the Subject Photograph by adding tint, slightly cropping, and changing the medium to create these pieces. (Young Decl. ¶¶ 13-14.) "Sex Pistols" and "Sex Pistols in Red," therefore, add only marginal artistic innovation to the Subject Photograph to change the aesthetic expression of the work.

Moreover, it does not appear that Young intended any distinct purpose or message when creating these works. In his deposition on November 20, 2012, Young stated that he did not remember why he decided to use the image of the Subject Photograph to make any of the Accused Works. (Young Depo. at 42:8-16.) He did not recall what statement or expression, if any, he intended to make by creating the Accused Works, or whether he meant to criticize the Subject Photograph, the Sex Pistols, or anything else with the Accused Works. (Young Depo. at 42:20-43:15.)

In his declaration, however, Young states that, in general, he creates art for "social commentary." (Young Decl. ¶ 11.) He explains that the various elements of the works were intended to evoke "grittiness," chaos, and to amplify the Sex Pistols' "punk-rock counter-culture image." (*Id.* at 12-14.)

A party may not "create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). New facts, allegedly not remembered at the time of a deposition, will not necessarily lead to the striking of a declaration if accompanied by a reasonable explanation. *Id.* at 1081. Here, however, Young's declaration offers no explanation as to how, after stating in his deposition that he recalls nothing of his motives when creating the Accused Works, he subsequently recalled various purposes and statements he intended to make. There also is no indication in the record that Young ever reviewed his deposition testimony and attempted to timely "correct" the testimony he gave therein. Indeed, Young's motivation and purpose in creating the Accused Works are not the type of recollections that could credibly be refreshed by review of documents or subsequent events. *See id.* Accordingly, the Court declines to consider Young's statements in his declaration as to the purpose and intended message of the Accused Works for purposes of this Motion.

Young's use of the Subject Photograph in "Sex Pistols" and "Sex Pistols in Red" is not transformative because it lacks any significant expression, meaning, or message that is unique vis à vis the works' original purpose. *See Campbell*, 510 U.S. at 579. Young has proffered no credible explanation of his purpose in creating the works, and the Court

cannot discern any possible new expression or commentary from the face of the works that raises the possibility of transformation. Even if the Court were to consider Young's late-blooming explanation for the Accused Works, it does not appear to the Court that the works were created for any reason other than to emphasize the characteristics with which the band was already associated. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2d Cir. 2006) (considering whether the new purpose in using an original work was "plainly different from the original purpose for which it was created"); *see also Cariou v. Prince*, 784 F. Supp. 2d 337, 349 (S.D.N.Y. 2011) (finding that use of original works as "raw material" in collage art was not transformative in part because the purpose of the defendant's works appeared to be the same as that of the original works). Accordingly, the Court finds that "Sex Pistols" and "Sex Pistols in Red" are not transformative works.

### b. The Nature of the Copyrighted Work

The Court next looks to the nature of the copyrighted work. "Works that are creative in nature, such as photographs that are meant to be viewed by the public for informative and aesthetic purposes, are closer to the core of intended copyright protection than are more fact-based works." *Calkins v. Playboy Enters. Int'l, Inc.*, 561 F. Supp. 2d 1136, 1142 (E.D. Cal. 2008) (citing *Kelly*, 336 F.3d at 820). The Ninth Circuit has recognized that photography is, by nature, at least minimally creative. *See Ets-Hokins*, 225 F.3d at 1076 (noting Judge Learned Hand's observation that "no photograph, however simple, can be unaffected by the personal influence of the author") (quoting *Jewelers' Circular Pub. Co v. Keystone Pub. Co.*, 274 F. 932, 934 (S.D.N.Y. 1921)); *see also Monge*, 688 F.3d at 1177 ("Simply because a photo documents an event does not turn a pictorial representation into a factual recitation."). Morris states that he made several creative decisions in taking the Subject Photograph, including "selecting the subject matter, angle of photograph, exposure, composition, framing, location," and the exact moment of creation. (Morris Decl. ¶ 3.) The Court finds that the Subject Photograph is creative in nature.

Young argues that the fact that the Subject Photograph has already been published makes his use a fair one. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 564, 105 S. Ct. 2218, 85 L. Ed. 2d 588 (1985) ("[T]he scope of fair use is narrower with respect to unpublished works."). Indeed, the author of an unpublished work has a greater interest in controlling the nature of the first public appearance of his expression than does the author of a published work. *Id.* Here, Morris has published the Subject Photograph in two books. The Court finds that Morris' right to copyright protection of the Subject Photograph is limited only slightly by this publication given the limited nature of that publication. On balance, the Court finds that the nature of the copyrighted work weighs against a fair use finding.

### c.   The Amount and Substantiality of the Portion Used

The Court next considers whether the amount of the work used was "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. The taking of the "heart" of the work generally weighs against a finding of fair use. *Monge*, 688 F.3d at 1189. For example, in *Blanch*, Koons extracted the portion of the image relevant to his intended commentary—the woman's legs and feet—but excluded other parts of the image in order to convey his unique message. *See* 467 F.3d at 257; *see also Mattel*, 353 F.3d at 804 ("Because parts of [songs, video, written works, and photographs] are naturally severable, the new work can easily choose portions of the original work and add to it."). Here, however, Young used most or all of the Subject Photograph to create the Accused Works; "Sex Pistols" and "Sex Pistols in Red" add nothing more than shading and a new medium. Even assuming Young had his stated purpose in mind when creating the Accused Works, it does not appear to the Court that Young used only the amount of the Subject Photograph necessary to convey that message. Accordingly, this factor also weighs against a finding of fair use. *See Monge*, 688 F.3d at 1179.

### d.   The Effect of the Use on the Market

Finally, the Court considers the effect of the use on the potential market for or value of the copyrighted work. *See Campbell*, 510 U.S. at 590. This factor involves

consideration not only of the extent of market harm caused by the particular actions at issue, but also "whether unrestricted and widespread conduct of the sort engaged in by the defendant . . . would result in a substantially adverse impact on the potential market" for the original. *Id.* (quoting *Harper & Row*, 471 U.S. at 569). Plaintiff published the Subject Photograph in two books, and therefore a market exists for the Subject Photograph. (*See* Linde Decl., ¶¶ 3-4, Exhs. 2-3.) Morris' decision to limit distribution thus far does not limit the scope of the potential market for the works, which may include individual sales, displays in galleries, or licensing the work to distributors. (*See* Zaitlen Decl. ¶ 5, Exh. D at 25.) *See Monge*, 688 F.3d at 1181 ("It would . . . not serve the ends of the Copyright Act—i.e., to advance the arts—if artists were denied their monopoly over derivative versions of their creative works merely because they made the artistic decision not to saturate those markets with variations of their original.") (quoting *Castle Rock Entm't, Inc. v. Carol Publ'g Grp.*, 150 F.3d 132, 145-46 (2d Cir.1998)).

Having found that the Subject Photograph is creative in nature, the Court is not persuaded by Young's argument that the Accused Works "appeal to different customers of differing artistic tastes." (Opp. at 11.) At a minimum, both the Subject Photograph and the two works, "Sex Pistols" and "Sex Pistols in Red," could appeal to overlapping audiences of Sex Pistols fans and those who appreciate punk-rock culture. That the works could appeal to similar audiences and markets is even more likely in light of the lack of any transformative purpose or message conveyed by the works; the two works are so strikingly similar to the Subject Photograph that they could easily "supersede" it in the marketplace. *See Kelly*, 336 F.3d at 821 ("A transformative work is less likely to have an adverse impact on the market for the original work than a work that merely supersedes the copyrighted work."). Accordingly, the Court finds that Young's use of the Subject Photograph, if widespread, could threaten the market for the Subject Photograph by eroding its uniqueness.

In light of the above analysis, the Court finds that no material dispute of fact exists such that a trier of fact could find that "Sex Pistols" or "Sex Pistols in Red" constitutes a

fair use of the Subject Photograph under 17 U.S.C. § 107.  *See Mattel*, 353 F.3d at 800.  The two works are not transformative because they do not invoke new expression, meaning or message distinct from that of the Subject Photograph.  *See Campbell*, 510 U.S. at 579.  The remaining factors also weigh against a finding of fair use with respect to those two works.  Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment with respect to "Sex Pistols" and "Sex Pistols in Red."  *See Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1115 (9th Cir. 2000) (noting that courts may resolve fair use inquiry on summary judgment where "the record is sufficient to evaluate each of the statutory factors).

### 2. "White Riot + Sex Pistols"

Unlike the other two Accused Works, "White Riot + Sex Pistols" bears certain aesthetic characteristics that raise the question of transformation, and, by extension, fair use.  *See Blanch*, 467 F.3d at 253.  The piece incorporates three distinct elements:  a Union Pacific logo, the words "White Riot" in graffiti with red stars, and two images of the Subject Photograph positioned side-by-side.  (Young Decl. ¶ 12.)  The images of the Subject Photograph are distorted by the graffiti words imposed over them, and the Union Pacific Logo looms above them, seemingly connected to the other elements although how so is not clear.  Thus, unlike the other two Accused Works, "White Riot + Sex Pistols" incorporates images beyond the band itself and arranges them such that the composition may convey a new message, meaning, or purpose beyond that of the Subject Photograph.  *See Monge*, 688 F.3d at 1177.  The possibility of new expression is apparent from the face of the work itself, even excluding Young's untimely explanation of purpose.  Accordingly, the Court finds that a triable issue exists as to whether the work does more than "merely supersede[] the objects of the original creation," and therefore a trier of fact may reasonably deem it transformative.  *Campbell*, 510 U.S. at 579.

The transformative character of a work bears upon the weight and meaning of the other fair use factors.  *See Campbell*, 510 U.S. at 579 ("[T]he more transformative the new work, the less will be the significance of the other factors . . . ."); *Monge*, 688 F.3d at

1174 (citing *Campbell*); *Cariou*, 784 F. Supp. 2d at 350 (same). If "the commentary has no critical bearing on the substance or style of the original composition, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish), and other factors like the extent of its commerciality loom larger." *Campbell*, 510 U.S. at 580-81. A transformative work is also less likely to have an adverse effect on the market than one that merely supersedes the original work. *See Kelly*, 336 F.3d at 821. Because a triable issue of fact exists as to whether the work is transformative, the Court cannot determine as a matter of law that "White Riot + Sex Pistols" is not a fair use of Morris' photograph in light of all the factors. Accordingly, the Court **DENIES** summary judgment as to "White Riot + Sex Pistols," because a jury could reasonably conclude that the work constitutes a fair use.

## V.

## CONCLUSION

In light of the foregoing, Morris' Motion for Summary Judgment as to Copyright Infringement is **GRANTED** as to Young's works, "Sex Pistols" and "Sex Pistols in Red." The Motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

DATED: January 28, 2013

DOLLY M. GEE
UNITED STATES DISTRICT JUDGE